UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROOSEVELT M. MITCHELL,

                          Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                        14-CV-303S
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.

_____

        1.      Plaintiff Roosevelt M. Mitchell challenges an Administrative Law Judge's

("ALJ") determination that he is not disabled as defined by the Social Security Act ("the

Act").   Plaintiff alleges that he became disabled in March 2011, due to neck pain, back

pain, and diabetes. Plaintiff contends that his impairments have rendered him unable to

work. He therefore asserts that he is entitled to payment of Supplemental Security

Income benefits ("SSI") under the Act.

        2.      Plaintiff filed an application for SSI benefits on April 5, 2011. His

application was denied. At Plaintiff's request, an administrative hearing was held before

ALJ Robert T. Harvey on June 21, 2012.  Plaintiff appeared with counsel at the hearing

and testified.   ALJ Harvey considered the case de novo. On August 6, 2012, ALJ

Harvey found that Plaintiff was not disabled.  On March 7, 2014, the Appeals Council

denied Plaintiff's request for review.

        3.      Plaintiff filed the current civil action on April 23, 2014, challenging

Defendant's final decision. On August 1, 2014 and August 7, 2014,  the parties filed

Motions for Judgment on the Pleadings (Docket Nos. 6, 7) pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure. For the reasons discussed below, Defendant's motion is granted and Plaintiff's is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is evidence that amounts to "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); <u>see also</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. <u>See</u> <u>Bowen</u>, 482 U.S.

at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In the present case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability (R. at 13); (2) Plaintiff has "severe impairments," including discogenic cervical spine and cervical radiculopathy, which significantly limits his physical or mental ability to perform basic work activities (20 CRF 404.1520(c) and 416.920(c)), (R. at 13); (3) Plaintiff does not have a mental or physical impairment, based solely on medical evidence, listed in Appendix 1 of the regulations. 20 CFR Part 404, Subpart P. Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.92(6), (R. at 13-14); (4) Plaintiff has retained the residual functional capacity ("RFC") for light work, with certain limitations;[1] and (5) Plaintiff has the ability to perform past relevant work as a machine operator and janitor. (R. at 18). Ultimately, the ALJ found that Plaintiff was not disabled, as defined by the Act, and was not entitled to supplemental security income. (R. at 18).

10.     Plaintiff advances three challenges to the ALJ's decision. First, he argues that the ALJ erred in evaluating his residual functional capacity ("RFC") by improperly

---

[1] Light work includes (1) lifting no more than 20 pounds at a time, (2) limiting the ability to reach in all directions or pull with his upper extremities, and (3) no crawling or working in areas where Plaintiff would be exposed to cold. (R. at 14).

evaluating the opinion of Donna Miller, D.O., and failing to develop the record. Second, Plaintiff argues that the ALJ did not rely on substantial evidence in evaluating whether he could perform his past relevant work. Third, Plaintiff argues that the ALJ did not fairly or adequately assess his credibility. All three arguments are unpersuasive.

11.    Plaintiff's first challenge is that the ALJ erred in evaluating his RFC. He asserts that the ALJ failed to incorporate Dr. Miller's opinion concerning his ability to bend, turn, twist, and reach, with no explanation. Dr. Miller opined that Plaintiff had moderate limitation with respect to repetitive heavy lifting, bending, turning, twisting, reaching, pushing, and pulling. (R. at 311-314).

An RFC assessment is "a finding of the range of tasks [a claimant] is capable of performing notwithstanding the impairments at issue."  See Amrod v. Comm'r of Social Sec., No. 5:08-CV-464, 2010 WL 55934, 17 (N.D.N.Y. Jan. 5, 2010) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). As a preliminary matter, an ALJ is not required to accept a physician's opinion in whole; the ALJ may accept certain portions of the opinion and reject others. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

Here, the ALJ determined that Plaintiff had the RFC to perform light work, with the exception that he had "occasional limitations in the ability to reach in all directions or pull with his upper extremities, he cannot crawl or work in areas where he would be exposed to cold." (R. at 14). In reaching this determination, the ALJ considered Dr. Miller's observations stemming from her examination of Plaintiff on July 12, 2011. (R. at 311-314). At that time, Dr. Miller found Plaintiff's gait and stance normal. (R. at 311-314). Further, she observed that Plaintiff did not require any assistance in dressing or getting on and off the examination table. (R. at 311-314). Additionally, Dr. Miller noted

that "[Plaintiff's] joints were stable and non-tender. There was no redness, heat, swelling, or effusion." (R. at 311-314). But Dr. Miller also noted that Plaintiff had unspecified "issues" with lifting, bending, turning, twisting, reaching, pushing, and pulling. (R. at 311-314).

Notwithstanding Dr. Miller's identification of unexplained "issues," evidence from the record establishes that Plaintiff completed a range of daily tasks---cleaning, cooking, and shopping---with the help of his daughter. (R. at 35). Plaintiff was also able to walk and push weight. (R. at 35).

Dr. Miller's own observations and Plaintiff's testimony concerning his daily activities conflict with Dr. Miller's assessment of Plaintiff's limitations.  The ALJ was therefore permitted to give "great weight" to that portion of Dr. Miller's opinion that was supported by the evidence and discount the portion that was not. See Venio v. Barhnhart, 213 F.3d 578, 588 (2d Cir. 2002).

12.     Moreover, the ALJ's RFC finding is supported by other medical evidence in the record, from Drs. Patel, Fox, Bansal, and Williams, which included no limitations on twisting, turning, or bending, as determined by Dr. Miller. The treatment notes support the ALJ's finding that Plaintiff's RFC included light work.

Observations by Dr. Fox and Dr. Patel reveal that Plaintiff's diabetes was under control and he was taking his medications regularly. On February 14, 2011, Dr. Patel examined Plaintiff and determined that his average glucose readings were 135-140. (R. at 214-216). Further, Plaintiff disclosed to Dr. Patel that he was walking 30 minutes per day indicating that Plaintiff was mobile. (R. at 214-216). Finally, Dr. Fox found that Plaintiff had full range of motion of the cervical spine. (R. at 222-223).

Further examinations by Drs. Bansal and Williams revealed that Plaintiff had normal sensation and reflexes. (R. at 249-289, 324-333).  Specifically, Dr. Bansal's examination revealed that Plaintiff had a normal sensory system, motor system, and deep tendon reflexes in the upper and lower extremities.  (R. at 249-289). Dr. Bansal recommended that Plaintiff stretch at home to help ease his pain. (R. at 249-289).  Dr. Williams found that Plaintiff had normal muscle tone and full range of motion. (R. at 324-333). During a subsequent appointment with Dr. Williams, Plaintiff informed him that his pain level had decreased. (R. at 324-333).

Months later, Plaintiff was again seen by Dr. Bansal, at which time Plaintiff expressed that he no longer had back pain and his flexibility had increased, although Dr. Bansal noted neck pain and recommended physical therapy. (R. at 249-289). Upon a subsequent examination, Dr. Bansal reported that Plaintiff stated the physical therapy was hurting his back and the medication prescribed was not controlling his pain to a tolerable level. (R. at 249-289). Despite Plaintiff's complaints, Dr. Bansal determined that Plaintiff's sensory, motor, and deep tendon reflexes were normal in the upper and lower extremities. (R. at 249-289). Thus, the various examinations performed by the various physicians support the ALJ's conclusion that Plaintiff is able to perform light work, with the limitations noted.

13.    Plaintiff also argues that the ALJ erroneously relied on an absence of evidence in evaluating his limitations, rather than properly developing the record by requesting opinions from his treating physicians. It is, however, Plaintiff's burden to prove his RFC. An ALJ must develop a claimant's complete medical history for at least 12 months before the month the claimant filed his or her application for disability. See

20 C.F.R. §§ 404.1512(d), 416.912(d). Further, requesting additional opinions from medical providers is only necessary when the ALJ cannot make a credibility determination based on the evidence of record. See 20 C.F.R. § 404.15612(e)(1). This occurs when there is a conflict or ambiguity that must be resolved because of a lack of necessary information in evaluating opinion evidence to make a disability determination. See Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

In the present case, the ALJ properly developed and analyzed the evidence in the record. As the record shows, the agency sent Plaintiff a letter explaining, "[i]f there is any evidence you want the ALJ to see, please give it to us as soon as possible. . . If a physician, expert or other person is not providing documents important to your case; you may ask the ALJ to issue a subpoena." (R. at 84). There exists no evidence that Plaintiff asked the ALJ for assistance in this matter. Nor did the ALJ find that additional medical information was necessary to resolve Plaintiff's application. Indeed, the record was complete with evidence from Drs. Fox, Bansal, Patel, Miller, and Williams. This was sufficient evidence from which the ALJ could make an RFC finding.  Development of the record was therefore not required. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999); see also Thompson v. Colvin, No. 12-CV-0890 (MAT), 2015 WL 3621532 (W.D.N.Y. June 9, 2015).

14.    Plaintiff's second argument is that the ALJ's finding that Plaintiff could perform his past relevant work is not supported by substantial evidence. Plaintiff argues that the ALJ erred by neglecting to consult the U.S. Department of Labor's Dictionary of Occupational Titles (DOT), or a vocational expert when determining whether he had a

disability. The Second Circuit has held that, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert." <u>See</u> <u>Bapp v. Bower</u>, 802 F.2d 601, 605 (2d Cir. 1986). An individual is able to perform past relevant work when he can perform the functional demands and duties of the job as he actually performed it or as generally required by employers throughout the national economy. <u>See</u> <u>Jock v. Harris</u>, 651 F.2d 133, 135 (2d Cir. 1981).

15.     Here, the record includes several descriptions of Plaintiff's past work. Plaintiff testified that his janitorial job required that he lift 10 to 25 pounds. (R. at 33). Further, Plaintiff explained that he spent approximately four and a half hours on his feet and about three and a half hours kneeling daily. (R. at 34). Additionally, Plaintiff testified that as a machine operator, he was required to lift 5 pounds and was on his feet for most of the day. (R. at 18). This type of work is consistent with the ALJ's RFC finding. (R. at 18). Plaintiff further argues that his work as a machine operator should not be considered because he did not work long enough for it to constitute past relevant work under the law. He also argues that there is no evidence to illustrate that he had the RFC to perform his past janitorial work.

These arguments are unpersuasive. A claimant must only perform work long enough to learn to do it for it to properly be considered past relevant work. <u>See</u> 20 C.F.R. §§ 404.1565(a), 416.965(a). Plaintiff testified that he worked at Star-Lite Manufacturing on a production line as a machine operator between 2000 and 2001. (R. at 32). Nothing in the record suggests that Plaintiff's skill set was insufficient for him to learn the job. Finally, as explained above, the ALJ's determination that Plaintiff could perform his past janitorial work is supported by substantial evidence.

16.     Third and finally, Plaintiff argues that the ALJ failed to properly evaluate his credibility because the ALJ did not properly consider his subjective complaints. Credibility determinations are generally reserved to the Commissioner, not the reviewing court. See Aponte v. Sec'y of Health of Human Svcs., F.2d 558, 591 (2d Cir. 1984).  An ALJ is, "not require[d] to accept the claimant's subjective complaints without question." See Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Under the Commissioner's regulations, a claimant must demonstrate by medical signs or findings that an underlying condition exists that produces the disability and symptoms alleged. See 42 U.S.C. §§ 423(d)(5)(A) and 1382c(a)(3)(A); 20 C.F.R. §§ 404.1529(c)(2), 416.929(b); Social Security Ruling (SSR) 96-7p; see also Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983).

17.     Plaintiff asserts that the ALJ failed to consider the necessary factors in evaluating his credibility. The record reflects, however, that the ALJ considered Plaintiff's subjective complaints, and in fact, incorporated them into his RFC finding. For example, the ALJ accepted Plaintiff's testimony that he could not work in cold weather, could not pull, and had difficulty moving in various directions. (R. at 14). Further, the ALJ considered that Plaintiff's neck and back pain caused him to be able to perform only a light range of work. Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment regarding the extent of his pain based on the medical findings and other evidence.  See Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 186 (2d Cir. 1984).

18.     After carefully examining the administrative record, this Court finds that substantial evidence supports ALJ Harvey's decision, including the objective medical

evidence and medical opinions contained therein.   This Court is satisfied that ALJ Harvey thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.   Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.


IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: June 22, 2015
          Buffalo, New York




                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge

11